I'm Robert Bramson. I represent the plaintiffs in each of the appeals, appellant in the Martin and Lujan cases, and appellee in the Wishnev case. The counsel for the parties have conferred and we've agreed that I will commence with 22 or more, well, that I will commence the time for rebuttal, then the various defendant parties will argue, reserving four minutes of their time for a cert rebuttal. Okay, so a total of 30 minutes on each side, but broken up between the initial argument and rebuttal. Do I have that right? Yes, Your Honor. We came up with that because you have a cross appellate. Yes, yes, and we appreciate your working together to divide the time amongst you. So, all right, please go ahead. All right, Your Honor, I note my time is running. Thank you very much. See, Judge, you could use magical powers. May it please the Court, these three appeals raise virtually identical legal questions of statutory construction. The principal question is the proper application under California law of the interplay between the 1918 initiative and the subsequently enacted constitutional provision. It's undisputed that portions of the 1918 initiative survived. It's undisputed that portions of the 1918 initiative did not survive. And the question is, where on which side of the line does the initiative's disclosure and consent provision for enforcing a loan contract requiring compound interest, where does it fall within there? First question that I have, and it goes to both main questions of state laws, why shouldn't we certify these questions to the California Supreme Court? We suggested it in our brief. Did you suggest it to the district court? If that's a procedure, I'm not aware of it. I was not aware of it, Your Honor, but no, I did not. One of the things that troubles me about these cases when we get a certification request on appeal is that we've already gone through the district court proceeding. The district court has made a finding as to an unsettled question of California law, and now we're on appeal, and the losing party sometimes comes up and says, oh, now I'm for certification. Certification makes a lot of sense to me, but I was interested in why the suggestion wasn't made below. I think it's sensible to, Your Honor, but I'm going to argue as if you're not going to do it, just in case you don't do it. So your clients are in favor of certifying the question. We'll ask the other side as well. But that's correct, right? Yes, Your Honor. All right. So on the merits of the first issue, whether the disclosure requirement applies, you do agree that the California legislature can regulate the amount of interest charged by insurance companies on these loans? Absolutely, yes, Your Honor. Why isn't compound interest just interest? In other words, if they have the ability to regulate interest without it requiring any sort of special advanced disclosures, and the compound interest doesn't take them over to usury limits, that's not an issue in this case, why isn't it just a form of interest that's subject to regulation? I mean, I would say about that, Your Honor, that the legislature has general powers to do almost anything unless constrained by some constitutional provision or an initiative. Right, but the constitutional provision allows the legislature to regulate interest. Do you agree? Yes. So given that, why isn't that language broad enough to allow the legislature to regulate compound interest? Well, if the court's obligation here were only to read the enactments and come to its own conclusion about the best reading, that's one possible way to read it. We certainly concede that. But as we emphasized in our briefing, and I want to emphasize heavily here today, under California law, the court is required to seek out, if it can, a reasonable interpretation and construction of the constitutional provision. But you just said it was a reasonable alternative. Tell me why it's the better construction. Well, I would like to step back and say that's not my obligation, because under California law, if there is any reasonable construction which allows both provisions to take effect, then that is the construction to be adopted. Now, obviously, it does have to be reasonable. It has to be a reasonable reading of the words used, and it has to have a reasonable result. So Post and Counsel, and I was pointing to some support in Supreme Court, California Supreme Court cases, I guess Carter and others, they take the position that exempt lenders are basically out of it, and the legislature has plenary authority to regulate them. And your reliance, as I read your briefs, is on more abstract statements in Pensioner, which was, in fact, dealing with only non-exempt lenders. So what's the best support for your position that exempt lenders are still subject to the rules of the 1918 initiative, other than the abstract statements in Pensioner? I think our best support is the wording of the constitutional provisions themselves. So does that mean there isn't a case that supports you? In my view, none of the cases provide much guidance to the court on this question in either way. Both sides have picked up stray remarks here or there, inferential arguments about things. But in our view, the plain language of the initiative, I'm sorry, of the constitutional provision favors our position and certainly renders a reasonable interpretation of that provision, which allows the disclosure and consent provision to apply. Can I work through your constitutional reading? Yeah. So I'm looking at the current amendment, and your critical language is the paragraph that says, however, none of the above restrictions shall apply. Correct. And your point is that none of the above restrictions deal with disclosure of compound interest? Is that correct? Correct. So that we have a constitutional provision. We have a new provision which says, well, wait a minute, we're doing — we have an initiative. The constitutional provision says we're doing away with some of the initiative. Here's all the provisions that won't apply when you're exempt, but it doesn't list the disclosure requirement. And it's undisputed, I think, that almost the sole thing at issue when this constitutional amendment was passed was the wording of the initiative. That's what they were directing the constitutional amendment at in 1934, and it's unchanged currently. So why wouldn't they have addressed one of the two substantive topics in the 1918 initiative if they — if the intent was to do away with it? Can I ask Judge Akuta's question again, and maybe in a slightly different way? Is there any case law, even at the lower court level, that suggests that the disclosure requirement is being enforced by administrative agencies of the State against exempt organizations? I mean, there's Judge Chen's decision in the Wischner case. Right. Right. We have all three cases in front of us. Yes. So why these three cases? Other than that, I'm not aware of it. Is there an administrative agency charged with regulating these lenders? I take it there is. Well, there's certainly a Department of Insurance, yes. But no guidance from that department about whether the — No, Your Honor, and I'm jumping ahead a little bit to what we view as a minor point, but you know, in our view, when the legislature did exempt insurers in 1981 and then passed some statutory regulations, they did not mention compound interest at all. And I mean, my worthy opponents argue that the fact that they were broad provisions suggests that the legislature must have thought that there was somehow some kind of field preemption, that kind of idea. And so, you know, we think what the legislature thought at that point, 50 years or 40 years after the constitutional amendment was enacted, is of little help to anything. But at any rate, our point is, to the extent they did address topics, they didn't address compound interest. At most, that's neutral, and arguably, that assists our side. And I guess I would say the same thing about the Department of Insurance regulations. They have left it alone. It could be inferred that they left it alone because the subject of disclosure and consent to compound interest is covered by the initiative. You said at the outset the cases present virtually identical legal issues. So maybe it's not important, but what different legal issue does one of the cases present that the other ones don't? Well, in two of the cases, questions of statutory standing were raised, and in one of the cases, it was not. Right. And in one of those two cases where it was raised, it was only raised as to one plaintiff. The other plaintiff, it was undisputed. And that arises only if we agree with you on the threshold question. Am I understanding that? Yes. You're right, Your Honor. So I want to talk about why it's a reasonable interpretation to continue forward the disclosure and consent requirement, because it really seems to me that's the nub of the parties' disagreement. So the way we envision it, we see no reason, no inconsistency with applying the disclosure and consent requirement before enforcing a compound interest, a loan for compound interest against exempt lenders, while leaving with the legislature complete power to, for example, prohibit the collection of compound interest whatsoever. That would not be inconsistent with the initiative, and we don't suggest for a minute that the legislature doesn't have that authority. The legislature could limit or control the frequency in which the compounding occurs. It could add any additional procedural requirements that it wanted to impose before on collecting We don't see anything unreasonable about having this consumer protection requirement of getting consent, getting clear consent, to remain a threshold procedural hurdle, and then the legislature is free to do whatever else they want to do, including, as I say, ban the collection of compound interest by insurers completely. Can you also address one of the issues that's raised by opposing counsel, if we agree with you on this threshold, or if we say we don't have to reach it, which is whether the insurance that existed actually complied with a disclosure requirement? So, the argument, as I understand it, is that the initiative says the agreement has to show the disclosure and the agreement to the compounding, and under insurance law or under California law, the agreement includes the policy and the application. So can you address that issue? Yes. I think Your Honor has described it accurately. I have a couple of comments. One is, I think that the argument mistakes what agreement has to be signed under the language of the initiative. We're now moving from statutory interpretation of the constitutional amendment to a question of statutory interpretation of the initiative. And the relevant language for the initiative says that characterizing compound interest can't be collected, now quoting, unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged that way. The argument, as I understand it, is that the only agreement in this case is the insurance agreement, which is comprised of an application and a policy. So why is that incorrect? Well, I agree that's the only agreement, but in our view, what's lacking is the express signed agreement to pay compound interest. So it's a single agreement, and presumably, the signature on the policy is the signature for the agreement, because otherwise, I guess your client wouldn't have an insurance policy. So their position is that's sufficient. Why isn't that sufficient? So first of all, first, it's inconsistent with the characterization of the initiative's requirements stated by the California Supreme Court in the McConnell 2 case. That's in our briefing. So in that case, it was not on all fours, because it was some vague, as is our custom, and then there was a reference to, OK, well, this is our custom, and here's some follow-up. But there's nothing like that in this case. In this case, we have a policy and an application, which together forms one agreement under California law. And the agreement under California law is clear about the interest provisions. The holding of the McConnell 2 case is not directly applicable to this case. You've got some dicta that helps you, but maybe it's really not particularly useful, is it? I don't think it's dicta, Your Honor. It was the other way. I know the language says the provision for compounding must be in writing, but in that writing that contained the agreement to compounding. Well, that's not true. There were subsequent writings which clearly disclosed, and that was in the McConnell 2 case. Well, subsequent writings were in agreements, though, weren't they? There were some statements, follow-up statements, if I recall. Right. Right. And they said that's not enough. That's not incorporated by reference. That's not enough to show custom, whereas here we have a specific agreement under California law, a constitutional agreement, which specifically lays out the compounding requirement. Well, just one more thing on the McConnell case. I would disagree. It's dicta. I think it was critical steps in the reasoning that the California Supreme Court followed in getting from the facts there, which were different, to getting to its holding. So if the initial application in this case said, you'll get an insurance contract in due course and read it carefully because you have 30 days in which to disavow it or to back out of it, would that be sufficient in your view? No, Your Honor. The initiative... If it said there'll be a compounding requirement in the agreement, take a close look at it because you'll have 30 days to back out of it. Would that have been enough? And the borrower signed that? Is that your hypothetical... Signed the... I'm talking about the application that's signed. I don't know. That is certainly a much more difficult case for our side than what we have because we have no mention at all. But when you get the... Isn't it true that when you get the insurance contract in this case, it says something at the beginning, like, this is a contract, read it carefully, it applies to you? Sure. But it's after the signature is our point. Let me give the... What I'm trying to figure out is whether or not, in your view, this is merely a formalistic requirement or there's some substance to it here. Well, I think there... Certainly I think there's substance. I mean, I analogize it to a federal truth-in-lending disclosure law where, I mean, there's a requirement. The purpose of the requirement is to protect borrowers. And the letter of the requirement must be met or there are consequences. And the actual... Well, so the letter was met, though, right? I mean, you seem to be agreeing that the letter of the requirement was met because there was an agreement that disclosed the compounding. You seem to be indicating that it's not enough for the letter to be met, but there has to be... Maybe the spirit is not met. No, Your Honor. Our position is that the last part of the initiative's provision and signed by the party to be charged therewith, that that part is not met. So you think your agreement... So the agreement in this case is not signed by the insured? The application is signed. The application says nothing about compound interest. So does the insured not have an insurance policy because they didn't sign the policy itself? I mean, I don't understand that at all. Whether, under California law, an insurance contract can be created by a signature followed by contractual provisions, that's a separate question. We don't, we don't... Your argument is essentially this is an advanced disclosure requirement. What if they'd sign, it would be okay if they signed the insurance agreement in your view, wouldn't it? Oh, absolutely, yes. Okay. So California law says your signature is incorporated into the insurance agreement. Why, under Judge Acuda's line of questioning, doesn't that suffice? Well, all I can say is if one reads the provision, it doesn't seem to me that it complies, and we think the McConnell case assists us. Let me give a hypothetical, if I can, quickly. Suppose we have a situation where the borrower never signs the application, returns it unsigned, say, then the policy is issued, the policy discloses compound interest. Twenty years later... Would the insured have a policy of insurance at that point, if it was, if they never signed the application? I don't know, but it's not important to my hypothetical. But we get, we get, we get to play with your hypothetical. But there's no contract in that case, correct? Okay. Twenty years later, the insurer wants to amend the contract and sends a proposed amendment, and the amendment has to do with some completely irrelevant term. It's a one-paragraph amendment, perhaps about investing proceeds. Sends it to the insured, and the insured signs it. Now, presumably, everybody would agree, originally, there was no compliance with the initiative, because there was no signature by the insured at all. And in my hypothetical, their argument, I assume, would have to go, because it's all one large insurance agreement, once the insured signs that irrelevant amendment 20 years later, now there's a signature on the agreement, and so now the initiative is met. And, you know, the purpose of that is somewhat of an absurd hypothetical. But the whole thing strikes me as a little bit of an exercise in absurdity. There's no contention in this case that your clients didn't know of the compound interest requirements, correct? Well, there's not, it's, that's not in the record whether they knew or didn't. So let's assume a case where they all know of the compound interest requirements, know that they have 30 days to disavow the contract, and yet don't do so. And then they sue. Under your theory, they would be, still be entitled to void, to void the permission. In the McConnell case, that was, that was one of the issues in the McConnell case is, some of the plaintiffs knew before they signed that agreement. Right, but there, under the formalistic interpretation, as Judge Acuda has pointed out, there was never a signed agreement in that case. Here, you've got what everybody agrees is an insurance agreement. Everybody stipulates it's an insurance agreement. If, if the insureds know that there's a compound interest provision in the insurance agreement, and know that they have 30 days to walk away from it, aren't all the substantive goals of the constitutional amendment served? I, I, I think this is just one of many consumer disclosure statutory requirements in, under, under both state and federal law, which are strictly construed. So the answer is, no, the purpose of the provision is prophylactic, and the court in McConnell ruled this needs to be strictly construed. So, so that I'm clear, you also think we should certify this question? Yes, Your Honor, I, well, it's also, I mean, I, this one, it's, we think the McConnell case provides some real guidance. Obviously, my opponents disagree. But you agree it's not on, it's not on all fours? No, yes, yes, we do agree with that. If I just spend a minute in my remaining time talking about statutory standing, we don't think that this Court should reach it, even if it reaches the substantive issues. At least one plaintiff in every case undis, in, I'm sorry, that's not true. In the Martin and Lujan cases, Lujan it wasn't challenged. In Martin, one of the plaintiffs, it's the undisputed statutory standing. In the Wishnev case, it's up on a certified interlocutory appeal. It was not an issue that was certified for interlocutory appeal. While a court has jurisdiction to reach it, we just don't see any reason why it should. Moreover, Mr. Wishnev would expect to amend his complaint on remand, assuming he gets the opportunity to do that, to address some of these issues. And for this court to reach out and reach that now is, would serve no purpose. If the court does reach it, we submit that statutory standing for declaratory relief. And under the unfair competition law, it's really very clear. The issue under the initiative itself is certainly less clear. It's pretty much foggy and messed up, if I can. But the factual, the procedural facts in the McConnell case, including the lower court decision, we think strongly supports our view. And I'd like to reserve the rest of my time unless the court does. Thank you. Thank you. We'll hear from the other side. Morning, Your Honor. Carolyn Thompson of Sidley Austin on behalf of MetLife. I'm here with Ms. Geist, who is counsel for New York Life, and Mr. O'Driscoll, who is counsel for Northwestern Mutual. And we're going to divide our time, actually. So Ms. Geist and I are going to spend 20 minutes, and I'm going to address the issue of lenders, and whether they are exempt from the usury law. Ms. Geist is going to address the issues with respect to whether we actually complied with the usury law, and the alternative, if you assume it applies. And Mr. O'Driscoll is going to address any remaining issues that come up, and then also is going to take our time on rebuttal. Thank you. First, I thought I'd start with the question of certification that you raised, Your Honor. We don't think this is a case that needs to be certified. Well, it's an unsettled question of California law, is it not? I think we would say it is. You can argue cases, and you can put together strands, but the California Supreme Court has never addressed this question, correct? The California Supreme Court has not addressed the extent to which the- The questions presented by this case have not been decided by the California Supreme Court. You don't have to fight me on that, that's easy. They have not, right? Not that precise question. Okay. And there's a court of appeal, unpublished decision, that addresses the questions and comes out against you. Yes, or in your favor of you, I'm sorry. In our favor. Favor of you. So all we have is an unpublished court of appeals memorandum. This is plainly of statewide concern. We have three high-powered lawyers here representing insurance companies. Why don't, in the California, if, if, what's the, what do we lose by certifying this question to the California Supreme Court? None of these cases are proceeding in discovery. They remain alive. If the California Supreme Court tells us to go away, we'll be perfectly prepared to decide them. So why, what, and we will be deciding unsettled questions of California law. So wholly apart from whether somebody should have asked earlier, what's the argument against certification other than that you just don't want it? Well, Your Honor, I, I would say that even if the California Supreme Court has not addressed this very specific question, whether the disclosure requirements and the compound interest section apply following the adoption of the amendment, that the other California Supreme Court precedent on this issue- Well, that's an argument about why you should win. Tell me why, what, as, as a matter of good judging, we have a, we're, we're sitting here in diversity, and we have a, an important question of California law. You may well be correct that if I put together the other decisions in California, you come out ahead. But the question is, why don't we, why shouldn't we give the, I've been surprised many times when we certify questions that the state court comes out differently than I would. It's, why shouldn't we give the California Supreme Court the first shot at making California law in this case? What's the, what's the policy argument against that? Well, well, I would say, Your Honor, that the California Supreme Court cases that address this, I think, very clearly say that if you have an exempt lender, that they are exempt altogether from the use-free laws. So you, your policy argument is it would be a waste of the California Supreme Court's time, because they've already made clear how this case should come out. Yes, I would say, first of all, they've already made clear how this case should come out. If you put all those cases together, they're uniform. All four of those cases say that once you're an exempt lender, you are exempt from the use-free law. So if it's so clear, why did one district judge end up the other way? I think it was a mistaken opinion, Your Honor. If you look, three out of four were pretty compelled by those prior California Supreme Court decisions. And then you have Thomason, which is a California Court of Appeal decision, which addressed this precise question and didn't find it a hard question. So you're saying Judge Chan is just an outlier and that this would just delay decision in your case? I am saying it's an outlier decision, and it would delay the outcome here. And then also we have an alternative ground in which all three judges below, as well, found that even if you assumed the use-free law applied, that it was met here. So you have two alternative grounds that compel the result here. And then the question is, is this really one that's going to recur frequently? And I think it's not, actually. I think what you've got here- It's going to recur as long as counsel has clients. He's going to bring these until the issue is resolved, is he not? You're going to keep removing them until he can find a California insurer to bring it, and it won't be removable. I think that once the Ninth Circuit rules on this, I think it's doubtful that he would continue to bring these cases. And I do think, also, if you look at the California Supreme Court's time, I think part of what you have here is that the appellants are essentially taking advantage of the fact that the way an insurance contract works is that you have an application which is signed and you have the policy which is not. And so, in most cases, you're not going to have this very technical argument that he's making about that you didn't actually sign the relevant document. Because there isn't an actual question here about whether or not, as Ms. Geis will address, whether or not there's sufficient clarity in the disclosure. Can I ask you a question of California procedure? Who de-published the California Court of Appeals decision? Because, and I apologize for getting it wrong, but it's the de-publication that interests me. Who de-publishes it? The Supreme Court. And I used to be on a state Supreme Court. And while there's no precedential thing to de-publishing, it's sort of the Supreme Court saying, we're not quite ready for that to be the precedential law of the state. Assuming that to be the case, doesn't that suggest that this, that this, the Supreme Court really does think this is an open question? If it was such a slam dunk, why did the Supreme Court de-publish that decision? I'm not going to read into the rationale. I know you can't, but that's why I said it goes against you. What I meant, which goes against you in my mind slightly, is this de-publication. If it was such easy, settled law, why de-publish? And I don't know the answer, you can't answer it. Other than the delay, so if we decide to certify the issue, we are talking about a couple of years, and then whatever time it takes when it comes back to us, one way or the other. But other than the delay, is there a reason why, in your sense that the answer is clear, is there a reason not to certify? That's what I would say, Your Honor, is that both, the answer's clear. There is two alternative grounds here that were the basis for the district court's finding that the cases should be dismissed. Not just how do you reconcile these three law and the amendment, but even if you found it applies, all of the insurers, with the exception of Northwestern Mutual, were found to have actually complied with that provision. So- But there's at least one that has been not found to have been complied. That's true, but I think that all the other courts found it to be quite clear that if you look at California law, that the insurance contract- Can I ask you one more question about certification before you get to the merits of this? How are your clients hurt by the delay? I think the uncertainty certainly is a big issue. If you think about the insurance contracts that are issued in the state and the policy loans that are made each year, I think the amicus briefs that came in said that each year, hundreds of millions of dollars in policy loans- You haven't changed your practices now to disclose the compound interest in the application? Well, one of the points we've made, that exempt lenders as a class should be exempt because of the nature of their business. Their policy forms are approved by the insurance- No, I understand. That's not the question I asked. Do your applications- Maybe the record doesn't disclose this, but surely it's an easy thing to disclose in the application form that's signed, that there's a compound interest requirement provision in the policy. That would only apply to policies that were issued in the future, but if you look at the circumstances here, the policies were issued and then 10 years later, 20 years later, 15 years later, somebody takes out that policy loan. Well, you were talking about uncertainty in the operation of your business, and that's why I asked whether you'd altered your business practices. Exactly, and that's the concern, is you have millions of outstanding policies in California, and that all of these people have a right to take out that policy loan. We can't go back and say, you no longer have a right to take out the policy loan that is in your policy and change the circumstances. Here's my difficulty with the uncertainty argument. It assumes you win. Would you like certainty and lose? That's the other point you're getting at, yes. In other words, if we said today, yes, this all violates the law, you know. I think absolutely the insurers would want certainty and losing as well, because if there was some type of, you know, global fix they were going to try to make for all policies issued in California, and to undertake the type of – Well, see, that's – and I want to let you get to the merits. That's my problem with the argument. The global fix is easy and implemented today. You just put in your applications that there's a compound interest requirement and somebody signs it. That solves the entire problem. The uncertainty about what your liability or lack of liability for the past really doesn't depend on certification. You're going to have the same uncertainty until we – until we decide or until the California Supreme Court decides. I think that actually if there was an adverse decision and it became the law of insurers could not charge compound interest on policy loans that were – that were entered into starting tomorrow, they would have to make a significant change to all of their existing outstanding policy. Last point – last point on this, and I promise. It doesn't become the law of the state if we make a decision. It becomes our best guess about what the law of the state is. And so from my perspective, uncertainty remains until the state Supreme Court either adopts or rejects our interpretation. But please go on to your – Okay. All right. And so as I said, I – it's our view that if you look at the cases in the California Supreme Court cases construing the effect specifically of the amendment on the usury law, that the California Supreme Court cases are uniform in holding that once the amendment was adopted that the usury law is not effective as to exempt lenders. And they derive that opinion, all of them, from the language in paragraph 3 that says the legislature may from time to time prescribe the maximum rate per annum of or provide for the supervision of or the filing of the schedule of or in any manner fix, regulate, or limit the fees, bonuses, commissions, discounts, or other compensation which all or any of the set exempted classes of persons may charge or receive from a borrower. That's not what – Judge Chen thought that that language was limited to points, fees, things like that, that using the canon of a justum generis, that that didn't apply to compounding. And I think the argument opposing counsel says is compounding is a method, it's not a fee. So why isn't that an ambiguity at least in that language? Well, that language, it applies in two places. So you have it in paragraph 2 where you have the actual restriction on the maximum rate of interest that the non-exempt lenders can charge and then you have it again in paragraph 3 where you have this broad delegation. And so in paragraph 2, you're looking at how do lenders – how could they exceed the maximum rate of interest? And so the court says, you know, I've got to be able to restrict any types of fees, compensation, whatever you're going to charge, all of those things fall within the type of interest. I agree with your argument. I agree that that clearly gives the legislature the power to restrict whether compound interest is charged, the amount of it, how it's computed. But how does it restrict the legislature's – how does it restrict the former requirement law, the requirement law in 1915 that the existence of compound interest be disclosed? It's one thing to say I can restrict its amount or its application, but where does that language do away with the earlier requirement that its existence be disclosed? But could you also answer my question about Judge Chen's interpretation with the use of generis and why that doesn't eliminate compounding? Please answer Judge Akuta's question first. Yes, Your Honor. So in paragraph 3, you look at all of these items that are described. You have fees, bonuses, commissions, discounts, or other compensation. All of those are essentially a form of interest. If you look in that paragraph where they delegate to the legislature the ability to fully regulate, they don't even use the term interest. They just use that phrase, fees, bonuses, commissions, discounts, or other compensation. And that start of that sentence is the legislature may from time to time prescribe the maximum rate per annum of. So in delegating that, they clearly understood the interest encompassed all those things. They weren't different than interest. They are the same as interest. But that's an argument – Compounding is not itself interest. That's a method so that the interest is deemed to be – I mean, looking at it from a different perspective, the interest is deemed to be – unpaid interest is deemed to be loaned. And so it's added to the loan principle and then accrues interest. And so if I understood the decision in Wishnev, he said this is not the same as fees or bonuses or other charges. It's a method of deeming unpaid interest payments to be part of the loan. So the interest can be at whatever the rate is. That can be regulated. It's how that unpaid interest is deemed. What's wrong with that analysis? Well, the fact that in that section it says that you can in any manner fix, regulate or limit those things means that you can regulate disclosures. Mr. Branson said that the compound interest disclosure was essentially the same as the Truth in Lending Act requirement. So that's a prescription about how you regulate that aspect. And I think the concession – That's why in your response to Judge Ikuda's question is helpful. I think you could make a good argument that Eugestam Generis gets the ability of the legislature to let the insurer regulate – let the legislature regulate compound interest. My question is separate. Where in that list of various things is the word disclosure? I think that's what Judge Chen was, I think, getting at. He was saying, look, this all gives you the ability to regulate compound interest. And maybe it's a fee. Maybe it's a charge. Maybe it's a method. You can regulate that. But where is the exemption from disclosure of its existence? If you give to the legislature the ability to fully fix or regulate, that would include the ability to regulate disclosures. And if you look at one of the things we pointed out in the actual policy loan section, in the insurance code, there are regulations of disclosures in there, how you disclose what is the cash value of the policy, how you disclose a variable rate calculation. All of those things are all in there. No regulation about compound interest, though, right? So if we took Pensioner's opposing counsel argues and says at all lengths, you should go to all lengths to harmonize the initiative with the constitutional language, there isn't anything on disclosure, as Judge Hurwitz points out. And certainly you could require disclosure without having a direct conflict with that language. So why wouldn't we try to preserve that? Well, I think that what Pensioner itself said and what Carter said is that by giving the legislature, and then the district court decisions as well said, once you give the legislature the ability to fully regulate this field, and which Mr. Bramson conceded in his argument here today, then that is inconsistent with continued regulation under the USREA law itself. And if you look in Carter, what happened... So basically what Carter said is once you give the legislature the ability to fully regulate, those exempt entities are subject to no limits whatsoever under the USREA law or anything else. And in Carter, you had these personal property brokers, the facts of that case, and the legislature had stepped in and adopted a regulation that applied to personal property loans under $300. And the entity there had made a loan over $300, and the Supreme Court said, well, sadly, this person is not subject to any regulation whatsoever now that the amendment was adopted. And if the legislature didn't act, then that exempt lender is subject to no limitation at all. And so one of the things you see here, when the legislature enacts, when it designates insurers an exempt entity, it immediately thereafter sets forth in a comprehensive policy loan section. I think we're taking you into your co-counsel's time. Thank you. May it please the Court. Good morning, Your Honors. So this case would require us to read the USREA law so that exempt does not mean exempt, and in any manner, fix, regulate, or limit does not mean in any manner, and furthermore, it also requires us to... ...regulate what? That's the question, isn't it? Sure. It's the question to regulate loans and the interest on those loans. What's the language of the Constitution? Does it say regulate loans or does it say regulate what? It says... If we're going to just, if we're going to bear on the language, let's focus on what it says. Sure. And I don't, I'm arguing the contract. So I have the language from the exemption for the contract. But it says in any manner, fix, regulate, or limit. Limit what? That's my question. Sure. It follows. The fees, bonuses, commissions, discounts, or other compensation which they may charge or receive. So I have no doubt that the legislature can regulate compound interest. The question is whether this language says they can regulate the requirement previously imposed to disclose its existence. Sure. So when you have the opportunity to regulate what is charged or received, certainly compounding interest is a charge that is received by the insurer. No, I have no doubt that compounding interest is something that can be regulated. I have a, the question I'm asking is why should I read this as including the separate disclosure requirement, the separate requirement that the existence of compound interest be disclosed in writing signed by the party? Well, it's the, and that goes back to my first point. It's not separate. First, exempt would have to mean you're not exempt. You're not exempt from everything. Even though you're an exempt person, you're still required to be part of this statute. But you are an exempt person. They're not exempted from a whole series of California laws. For example, they're not exempted from laws that prohibit murder or extortion. So the only thing they're exempted from are the things that are listed here. And so tell me why those things that are listed include a disclosure requirement. Because the disclosure requirement cannot be separated from the restriction. Tell me why. Your opponent says it's quite easy. You can, you can regulate the heck out of, out of compound interest. You can do all sorts of things with it. The one thing you can't do is take away the initiative's requirement that you notify somebody in writing and have that person sign the writing. Now, we'll get to later whether such a thing exists, but you're arguing that there's no such requirement. Sure, there is in part because the actual language says the computation, it's a, it's a full sentence, that we've taken a part of a full sentence out and said that somehow that full sentence still requires exempt lenders to comply with the statute. When the full sentence says, and in computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, comma, nor shall interest thereon be construed to bear unless an agreement to that effect is clearly expressed in writing and signed by the party charged to there. Together, that is a single requirement. It is one sentence. It is a restriction on non-exempt lenders. Well, but how do you get there other than just saying it? I mean, there's two separate requirements in that sentence. If you, if you, if you don't, if you don't disclose, you can't have it, right? Which is fair, except for you have to ignore the exemption, which says exempt persons of this, this statute allows the legislature to exempt persons. And persons and corporations are required under this statute to comply with all of these provisions, the sections one, two, and three, so that you have to say when we say exempt, we don't really mean exempt, we mean something other than exempt. And you still have to piecemeal parse through each and every one of these sentences to figure out, even though we said exempt, if you're not exempt. Right, but it's, your opponent says, and so respond to it, we're required to adopt a reading that harmonizes the two. And an easy reading that harmonizes the two is interest is, the compound interest is now allowed to the extent the legislature allows it, but you still have to disclose its existence. I, I actually think the plain and reasonable meaning of exempt is exempt. And that when the legislature has the right to in any manner fix, regulate, or limit an exempt lender around its lending habits and how it lends to its customers, it really means that the legislature has the full extent of that authority, and here took that authority. Do you want to address whether the policy and the application form, one agreement, or whether it's necessary for the policy itself to be signed? So, in addition to exempt not being exempt, and in all manner not being in all manner, we also have to ignore the statutory requirements of insurance code 10113, which says, specifically, that applications, which are signed, are made part of a written agreement for insurance. Judge Chin never addresses 10113. It's a huge hole that leaves that opinion uncertain as to why an insurance contract that is fully integrated and signed is anything other than a fully integrated signed contract. I think what Judge Chin says, to be fair to him, he doesn't ignore that argument. He may ignore the specific provision. He says, this is a requirement of advance notice, sort of like the Truth in Lending Act, and we want somebody to know before they enter, before they have a binding agreement, that there's a compound interest requirement in it, and, therefore, we want a separate writing, the Constitution, the 1915 Act says, a separate writing signed by the person to be bound. Why isn't that a reasonable reading? Sure, because it's not in the statute. The statute doesn't say you have to have a separate contract. That would be reading into the statute something that doesn't exist. Does that mean that it has to be contemporaneous with the loan? It says, unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. The only compound interest requirement here is in the policy, right? It is in the policy. The policy is not. Under California law, the application is incorporated into the policy. Fair enough. But is the policy signed by the insured? Well, the statute, the policy, if it's not signed by the insured, meaning if the You don't have a policy, you don't have an agreement. No, no, we have a California law that says we'll take one signing and incorporate the agreement into the other. That's fine. That makes perfect sense as a matter of contract law. But you do agree that the application is not signed by the party to be bound. The application is signed by the party to be bound. The statute says they're one contract, and the contracts themselves integrate the application into the contract. When you are delivered your policy, you are delivered with your policy a signed application, which is endorsed on it, and the terms of the contracts themselves provide that this is an integrated contract. Now, was that the case when this initiative in 1918 was done? Or should we be looking at what the people who wrote the initiative, I guess it's a public initiative, weren't contemplating the subsequent statute that says the policy and the application are one agreement? Do you know what the state of the insurance industry was in 1918? I'm not sure that I have that rich a knowledge of insurance history. While I do have a fairly rich knowledge, I know that the statute that does incorporate the application is effective as of 1936, so it's longstanding been the practice of insurers to incorporate the application. And we can't just add compounding interest to the application, because then we have to add every provision. But let me assume you're not exempt for a second. I know you think you are. I'm not exempt from this requirement. Make yourselves not an insurance company, just an ordinary lender. So if somebody signs an application that says, I agree to a contract that will  be subsequently sent to me, and I also agree that this application will be incorporated into the contract, and the contract that is subsequently sent to them, no previous disclosure, has a compound interest requirement, do you think that complies with the 1915 initiative? Well, it does here for a number of reasons. Answer my question first. Yes. In that pure, put aside the insurance code and everything else, we're just dealing with a regular lender who says, somebody says, I apply for a loan, and then they send back the loan with a copy of your application, and inside the loan is a compound interest requirement. And a provision that says it's integrated. Yeah, does that comply with the 1915? Yes, it does, and in part because the whole, the contract is whole. It's made a contract by the signatures of both parties. The terms of the contract allow you to integrate all of the provisions and make it one integrated signed agreement, and the temporal piece that I think is important and what your question speaks of is, did you have in writing a signed agreement that provided you with notice of compounding interest before you took a loan? Unlike McConnell, where there may have been things after you took a loan, this is before you took a loan. And if we look at each of these plaintiffs, they took their loans 24 years. Mr. Lujan took his loan 24 years after receiving a contract, which on its own terms and by law now had to have a 10 or 30-day disclosure where he could sit with his signed integrated contract, read all of it as the contract requires, and still take it and send it back and say, I don't want this contract. So he had full and complete notice, 10 days to turn the contract back, and took a loan 24 years after he received signed branded contract. I think your co-counsel would like your remaining time. Thank you. Thank you, Your Honors. Thank you, Your Honors. If I may, may I reserve my remaining time for rebuttal at this point? We'll give you a couple of minutes for rebuttal. Oh, great. Thank you. I would like to answer the question regarding the regulation of compound interest and how it's in conflict. Once we establish that the legislature may in any manner fix, regulate, or limit compound interest, the question becomes, does any other provision of law conflict with that? And if it does, then the provision of the Constitution allowing the legislature, the authority to in any manner fix, regulate, or limit compound interest is superseded. Did the legislature regulate this disclosure requirement in any way? You're making sort of a field preemption argument, aren't you? No, Your Honor. I'm arguing that the legislature ever enacted a law that said one need not disclose in a separate writing the existence of compound interest. Did you? I'm not making a field preemption argument. Section 2 of the usury law is in conflict with the provision of the Constitution. Tell me where the legislature has enacted a law that says the disclosure requirement is no longer applicable. The question, Your Honor, is whether — No, that's the question. That's the question I'm asking. Can you answer that question? Well, to answer that question, the policies provide, the policies that are approved by the insurance department provide for the disclosure of compound interest. Has the legislature ever enacted a law to do away with the disclosure? I think the answer is easy. It's no. You may have arguments about why other laws make it inapplicable, but the legislature has never sought to regulate disclosure here, has it? I'm not sure of the answer to that, but I think the question for this appeal, Your Honor, is not that. Well, but can you answer my question? Has — is there any California law enacted by the legislature that says, notwithstanding the 1915 initiative, insurers need not disclose the existence of compound interest in their — in their policies? The 1934 amendment supersedes the Section 2 of the usury law. I understand that argument, and you're not waiving it. Okay. Does the — did any of the agencies that have authority over insurance lenders say disclosure is not required? Are there any guidance documents or regulations to that effect? But no, Your Honor. I — well, I believe the answer to that question is the disclosures are provided in the policy. But — Okay. So there's nothing — so the answer to Judge Hurwitz's question is there's no positive California law that says disclosure is not required. The 1934 amendment does that. Okay. And that's what we currently have before us that we're excluding. You may win this — you may win this argument. I was asking a very specific question. Yes. Which is that you keep saying the California legislature has the ability to regulate this field. Yes. So my — has given the ability — has the ability to regulate this field. So my question is, has it ever regulated this specific requirement? And I think your answer is no. But you're arguing that it doesn't matter. Once they exempt an insurance agency, it's exempt — insurance is exempt from everything. So just wrap it up, because you're over time. Yes. If I may, Your Honor, the fundamental issue that I don't think has been brought out yet is that Section 2 of the Usury Law is not simply a disclosure requirement. Section 2 of the Usury Law prohibits the compounding of interest unless there is an agreement in writing signed. That would be inconsistent — that is inconsistent with the legislature having the sole power to in any manner regulate compound interest. One example is this. Opposing counsel said that Section 2 of the Usury Law would be consistent with the legislature banning compound interest. That's not true. Section 2 of the Usury Law says that lenders may not charge compound interest, are prohibited from charging compound interest unless they have an agreement in writing. That would be inconsistent with the legislature prohibiting compound interest absolutely. It would also be inconsistent with the legislature having the sole power to regulate in any manner, such as providing other methods of disclosure, such as annual notices that don't need to be signed or other methods of disclosure. Yes, I think we have your argument. Thank you, and we'll give you two minutes for rebuttal. Thank you very much, Your Honor. Thank you. Your Honor, I want to make a point — could you move in front of the mic, please? I'm sorry. I apologize. I want to make a point about this compliance issue. Ms. Geist referenced the statutory provision regarding incorporation of the application into the insurance contract. But importantly, what that statute actually says is if the application is attached to the policy when it's sent to the insured, then the application becomes part of the insurance policy. If it's not attached, then it does not become part of the contract of insurance. And the reason I think that's important is, from our perspective, it points out a couple of things. One — It's not attached in every case before us? It's not. All three — in all three situations here — well, there's more than three, because there's more than three plaintiffs. But in each plaintiff's case, the application was attached. Okay. So why does it matter what happens when it's not? Well, for one thing, it answers the question raised by Judge Ikuda, which is, is there an insurance contract if there's no signed policy? Okay? Because the legislature says there is an insurance contract, which is contained in the — it's the policy terms. But there is no application signed or otherwise incorporated into it under that statutory provision. So I think that — Right. And I — but why it's important to this case, I think, is that it seems to me that it casts further doubt on the argument that the disclosure and written consent requirement of the initiative can be met by this sort of larger insurance contract argument. Because it would mean that it depends — compliance with the initiative depends upon whether the application was attached to the policy or not. I'm looking at the statute, and they say, I guess, unless the same are endorsed upon or attached to the policy. Is that 10113? Yes. Is that what you're referencing to? Yes. Yes, Your Honor. Do we know what are endorsed upon means? I believe it means attached, but — Well, they say are endorsed upon or attached, so I doubt that it means attached. It must mean something else. I apologize. I don't know what that means. Okay. Work backwards. We have a 1915 initiative, which is — is law as opposed to a constitutional provision, or is it a constitutional provision?  It's a — It's a statute. It's an initiative statute. It's an initiative statute. Okay. And then later on, the legislature enacts a new statute, the one that Judge Acuda just read to you, which says whenever we're trying to figure out when — whether a contract is signed, at least in the insurance field, we will incorporate the application into it as long as it's given to — so why isn't that, wholly apart from what happened in 1934, simply the legislature amending prior law to provide for disclosure? Because under California law, the legislature cannot amend or modify a people's initiative. It can only be modified by the people themselves, either through appeal or through enactment of a constitutional — Well, it doesn't — it doesn't say anything about what is the agreement. It just says, unless an agreement. So I assume that agreement is something that's determined by California law, like a contract formation issue under California law. So California law will tell us what an agreement is, and here it does it by a combination of state common law and statute. So I don't understand how that detracts from our interpretation of this initiative. Well, I agree that the question of whether there's an agreement is determined under California law. I do agree with the Court on that. But what our point is, is agreement for what? And — Well, could California — could the legislature have said this year, we've entered the digital age, so an agreement in writing is now pushing the box on your computer that says, sign here. Legislature could do that, could it not? I think under the electronic signature, the general laws of which California has adopted — So they could modify — they could modify the agreement in writing provision of the 1915 initiative by saying — by saying an electronic signature is an agreement in writing. I think we've done that. That's probably true. So why can't they modify it by saying, combining the two documents together makes one? Well, if they are modifying it, they can't do it. Not modify it, but — I guess that's the answer. I'm sorry. If they're explaining it — Explain it. Yeah. Then I don't know. It's more difficult. But, you know, I would just — I would go back and say that the language is an agreement to that effect, and that is what is supposed to be signed. And if that can be met by any subsequent signature — so in my hypothetical example, 20 years later, there's a signature on an amendment to the contract — if that complies, then it really does not seem to be consistent with the obvious intent of the initiative, which was, you put a piece of paper in front of the borrower before they enter into the transaction and say, we're reserving the right to charge you compound interest, sign here if you agree to that. So — Well, it seems like in your hypothetical, either a court would have to say the original policy was effectively signed, or they would have to say there was no agreement between the parties. So I don't see how your hypothetical helps us here. Well, you can't — If the original application wasn't signed, I would say there was no agreement. But you could see if the two parties acted as if there had been an agreement, a court might subsequently say this constitutes an agreement. So we would be right back where we are right now. The subsequent document wouldn't create the agreement, it would be by force of a court decision. Well, you're right. There might be an agreement. And under California law, you can have contracts that aren't signed. But there would be an agreement, but there would not have been consent in writing, signed in a written signature to it, which is the requirement of the initiative. Well, I see I have 40 seconds. If there's any other questions, I would invite them. I appreciate your argument. All right. Thank you very much. And with two minutes left for rebuttal. Thank you, Your Honors. With respect to the signature issue, as was pointed out before, the application for the policy is the way that the policy owner signs the contract. That is everything that's — all the terms that are in the policy are signed for by way of the application. Do we know if that was true in 1918? Oh, yes, I believe it was. Yes. And I think that the amicus briefs support that. In 1918, that was true. The California Supreme Court decision, Boyer, from 1929, I believe, that said the policy and the application together constitute the contract. The Burr case from 1935 said the same thing. This Court — So that — but we only get to that issue if you're not entirely exempt, right? Yes, Your Honor. So, again, let's address that in the context of a shady payday lender who says, I will agree to give you a loan on terms and conditions to be specified later. If you agree to that, sign here. And then you get the loan later, and it has compound interest in it. And they're not exempt. Your view is that because the application — and the application on it says this will be incorporated into the contract, and the contract says it's integrated. I asked one of your colleagues this question. Am I interested in your answer? Well, not necessarily. Do you think that complies with the initiative? I would not necessarily say that complies. Insurance is special. That's why it's exempted. That's one of the reasons it's exempted from regulation. I know, but — Yeah, I'm asking you to assume you're not exempt for a second. If you're not exempt, would that — under that scenario, this non-exempt lender, that complies, you think? Well, if it was a non-exempt lender, whereas there was case law stating that the application and the agreement — Yeah, okay. Well, I assume that you — people love to change the hypothetical, so I'll — Forgive me, Your Honor. No, no, no. I'll accept your change. Please, Your Honor. The case law that says the application is incorporated into the agreement, you think that complies with the 1915 initiative? Well, that may, Your Honor. If it was in the agreement and there was case law saying that in these types of agreements and these applications together constitute a contract, and there was an insurance code or I guess a statute that also said that same thing, then I think we'd have a very similar situation that we have here with insurers. But I do not believe that's the case. Insurers are special. They're comprehensively regulated by the legislature, which is one of the reasons they were exempted. And, again, I just want to stress again, Your Honor, one more time, if I may, Section 2 of the Usury Law is not a mere disclosure requirement. It is a substantive prohibition on compound interest unless the agreement is signed in writing. That is in conflict with the provision of the Constitution that says that the legislature may in any manner fix, regulate, or limit compound interest. The legislature could not outright ban compound interest if they were subject — if insurers were subject to the Section 2 of the Usury Law. The legislature could not have other manners of regulation, such as, for example, disclosures that are not signed, which they clearly are permitted to do under the 1934 amendment. MS. PLETKA Thank you.  BOUTROUS Thank you very much. MS. PLETKA You're over time. MR. BOUTROUS My apologies. MS. PLETKA We appreciate the arguments of each time, of each party, and your willingness to share your time. And the cases of Martin v. Metropolitan Life Insurance, Wichita v. Northwestern Mutual Life Insurance, and Lujan v. New York Life Insurance are submitted. Thank you. We are adjourned for this session.
judges: Ikuta, Hurwitz, Molloy